UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUI XIAO,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>　　　　　　　　　Respondents. | Case No.: 26cv474-LL-BJW<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>[ECF Nos. 1, 2] |

　　　　Before the Court are Petitioner Rui Xiao's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [ECF No. 1 ("Pet.")] and Motion for Temporary Restraining Order [ECF No. 2 ("TRO")]. Also before the Court are Respondents' Return in Opposition to the Petition [ECF No. 5 ("Ret.")], and Petitioner's Traverse [ECF No. 6 ("Traverse")]. For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus, **DENIES AS MOOT** the Motion for Temporary Restraining Order, and **ORDERS** a bond hearing.

///

///

## I. BACKGROUND

Petitioner, a native and citizen of the People's Republic of China ("China"), came to the United States on May 11, 2023 on a B2 nonimmigrant visa, which expired on November 10, 2023. Pet. at 2; ECF No. 5-1, Declaration of Conception Arredondo ("Arredondo Decl."), ¶ 6. Petitioner unlawfully remained in the United States beyond November 10, 2023. Arredondo Decl. ¶ 7. In October 2024, he was arrested, charged with, and later convicted of felony offenses for facilitation to commit fraud and solicitation to commit fraud in Maricopa County, Arizona. Arredondo Decl. ¶ 10; Ret. at 2. On October 26, 2024, Petitioner was taken into ICE custody and served with a Notice to Appear for removal proceedings before an Immigration Judge. Arredondo Decl. ¶ 8. On July 25, 2025, the Immigration Judge ordered Petitioner removed to China. Pet. at 2; Arredondo Decl. ¶ 12; ECF No. 5-2 at 4. Both Petitioner and DHS waived appeal of the removal order, and therefore, the removal order became administratively final. Arredondo Decl. ¶ 12.

On August 3, 2025, United States Citizenship and Immigration Services prepared a travel document request package and forwarded it to ERO's Removal and International Operations Division ("HQRIO") in Washington, D.C. for routing to the Chinese government. Arredondo Decl. ¶ 13. On or about October 19, 2025, the San Diego Field Office prepared an identity verification package pertaining to Petitioner and was thereafter routed to the Chinese government by HQRIO. *Id*. ¶ 15. On October 20, 2025, Petitioner was notified in writing that ICE had determined that he would remain in custody pending removal because Petitioner posed both a significant threat to public safety based on his criminal history and a significant risk of flight. *Id*. ¶ 16. During this time, Petitioner "tried strenuously to speed up his removal to China." Pet. at 2. He immediately let ICE know about his passport having expired in June 2024, called the Chinese embassy and consulate, and wrote to ICE throughout October to December to ask about the status of his travel document. *Id*. He even asked if he could be removed to Mexico. *Id*. As of January 30, 2026, ICE is waiting for Petitioner's identity verification by the Chinese government. Arredondo Decl. ¶ 17.

Petitioner alleges that his indefinite detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. at 6–9. Petitioner also alleges that there is a risk that Respondents will remove him to a third country without adequate notice and an opportunity to be heard, in violation of the Fifth Amendment, the Convention Against Torture, and implementing regulations. *Id*. at 9–11. Therefore, Petitioner seeks an immediate release from custody pending removal proceedings and an order enjoining Respondents from unlawfully removing Petitioner to a third country. *Id.* at 6–11; TRO at 2–6.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hamdi*, 542 U.S. at 536 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention."); *see also Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order.").

## III.   DISCUSSION

Petitioner alleges that his indefinite detention violates *Zadvydas*. Pet. at 6–9. Petitioner also alleges that there is a risk that Respondents will remove him to

a third country without adequate notice and an opportunity to be heard, in violation of the Fifth Amendment, the Convention Against Torture, and implementing regulations. *Id.* at 6–11; TRO at 2–6. Respondents argue that Petitioner's detention is lawful and that he has not established that there is no significant likelihood of removal in the reasonably foreseeable future. Ret. at 3–7. Respondents also claim that ICE is not seeking to remove Petitioner to a third country. *Id.* at 7–8.

When a noncitizen has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." 28 U.S.C. § 1231(a)(1)(A). After the removal period, this statute "limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If the petitioner satisfies their initial burden, then the burden shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the noncitizen's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

In Petitioner's case, it has been over six months since Petitioner's removal order became administratively final on or about July 25, 2025. Thus, the Court finds Petitioner's current detention is no longer "presumptively reasonable."

The Petitioner now has the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

*Zadvydas*, 533 U.S. at 701. "Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up). However, Petitioner must offer more than "conclusory statements suggesting that he will not" be removed. *Andrade v. Gonzalez*, 459 F.3d 538, 543 (5th Cir. 2006); *Quassani v. Killian*, Case No. 2:17-cv-01678-APG-PAL, 2017 WL 3396506, at *2 (D. Nev. Aug. 4, 2017) ("question[ing] whether petitioner can meet his initial burden" given that he "has offered nothing more than conclusory statements with respect to the likelihood of his removal in the foreseeable future").

Here, Petitioner has met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Petitioner notes that he has "done everything in his power to aid ICE, filling out applications, calling his consulate, and sending messages to ICE asking what else he could do," yet ICE has been unable to deport him for over six months. Pet. at 9. Moreover, according to a monthly report from ICE, there were 37,908 Chinese nationals with final orders of removal as of November 2024. Pet. at 30. The same report designated China as "uncooperative" in assisting ICE's removal process. *Id*. at 35. Accordingly, Petitioner meets the initial burden of demonstrating that removal is not significantly likely in the reasonably foreseeable future.

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents argue that ICE routinely obtains travel documents for Chinese citizens and effectuates removals to China and that ICE removed 517 Chinese nationals to China in 2024. Ret. at 5. However, this means that only 1.4% of the total 37,908 Chinese nationals with final orders of removals were actually removed in 2024. Moreover, "general indications that U.S. agencies have been in discussions with target country regarding repatriation efforts do not indicate that those discussions will result in the timely removal of Petitioner, as it is unclear whether those efforts will be successful." *Lopez-Cacerez v. McAleenan*, No. 19-CV-1952-AJB-AGS,

2020 WL 3058096, at *6 (S.D. Cal. June 9, 2020) (quoting *Zhao v. Kelly*, No. CV 17-777-BRO (KES), 2017 WL 1591818, at *4 (C.D. Cal. Apr. 27, 2017)); *see also Dipraseuth v. Noem*, No. 25-CV-3471 JLS (BJW), 2025 WL 3677674, at *3 (S.D. Cal. Dec. 18, 2025) (rejecting similar argument that "ICE had been routinely obtaining travel documents for Laotian citizens and effectuating removal flights to Laos" because there is "'no evidence regarding the percentage of successful requests to'" a particular country, and "the fact that others have been removed to a country alone cannot constitute changed circumstances in an individual Petitioner's case").

Respondents state that they submitted the travel document request back in August and then again in October, but they have yet to hear from the Chinese government. Ret. at 5–6. Further, Respondents have not provided any "specific information regarding how or when they expect to obtain the necessary documentation or cooperation" from the Chinese government. *Mohamed v. Ashcroft*, No. C01-1747P, 2002 WL 32620339, at *1 (W.D. Wash. Apr. 15, 2002) (finding that a letter dated three months prior stating that meetings between [respondents] and the Ethiopian Embassy "appear to have resulted" in an agreement to issue travel documents was insufficient to meet respondents' burden and granting relief); *see also Souvannaseng v. Noem*, No. 3:25-CV-3473-CAB-DEB, 2025 WL 3641180, at *2 (S.D. Cal. Dec. 16, 2025) (a "vague assertion that 'ICE has worked diligently to effectuate Petitioner's removal to Laos. These removal efforts remain ongoing'" and that "they removed 177 Laotian nationals in fiscal year 2025, up from 0 Laotian nationals in fiscal year 2024" was not sufficient to show there is a significant likelihood of removal in the reasonably foreseeable future"); *Islam v. Kane*, No. CV-11-515-PHX-PGR, 2011 WL 4374226, at *4 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* No. CV-11-0515-PHX-PGR, 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Repeated statements from the Bangladesh Consulate that the travel document request is pending does not provide any insight as to when, or if, that request will be fulfilled."). Therefore, "an unsubstantiated possibility" that the Chinese government will eventually approve Petitioner's travel document request "does not satisfy Respondent's

burden." *Lawrikow v. Kollus*, No. CV081403PHXGMSLOA, 2009 WL 2905549, at *13 (D. Ariz. July 27, 2009); *Andreasyan v. Gonzales*, 446 F. Supp. 2d 1186, 1189 (W.D. Wash. 2006) (finding that the petitioner's case was "still under review and pending a decision" from the Uzbekistani Consular did not meet respondents' burden); *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006) (ICE did not meet its burden where it "merely assert[ed] that it has followed up on its request for travel documents" but could not provide any "substantive indication regarding how or when it expect[ed] to obtain the necessary travel document from the Indian government.") Thus, Respondents have not shown there is a significant likelihood that Petitioner will be removed to China in the reasonably foreseeable future.

While Petitioner requests his release outright, the Court finds the appropriate remedy is a bond hearing before an immigration judge ("IJ"). *See Lopez-Cacerez*, 2020 WL 3058096, at *6 ("courts in this circuit [] have favored 'ordering a bond hearing before an IJ over ordering outright release'") (citation omitted); *Cortez v. Sessions*, No. 18-cv-01014-DMR, 2018 WL 1510187, at *10 (N.D. Cal. Mar. 27, 2018) (ordering bond hearing but not ordering immediate release). Here, there is no indication that Petitioner has received a bond hearing before a neutral immigration judge ("IJ") to address the due process concerns related to his prolonged detention–only that ICE decided to continue detaining Petitioner due "a significant threat to public safety based on his criminal history and a significant risk of flight." Arredondo Decl. ¶ 16. "IJs are a specialized and experienced group within the Department of Justice already entrusted to make determinations about the government's legitimate interest in the further deprivation of a noncitizen's liberty. 'The power to order a bail hearing before an IJ is the type of practice and workable remedy within the district court's broad equitable powers.'" *Mansoor v. Figueroa*, No. 317CV01695GPCNLS, 2018 WL 840253, at *3 (S.D. Cal. Feb. 13, 2018) (quoting *Mau v. Chertoff*, 562 F. Supp. 2d 1107, 1114 (S.D. Cal. 2008)). The Court notes that there are certainly concerns regarding his criminal conviction. Thus, the Court declines to order Petitioner's immediate release,

and instead orders that Petitioner receive an individualized bond hearing before an IJ to determine whether he is a flight risk or a danger to the community.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, **DENIES AS MOOT** the Motion for Temporary Restraining Order, and **ORDERS** an individualized bond hearing within **seven days** of this Order. In addition, Respondents are prohibited from removing Petitioner to a country other than China[1] without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025).

**IT IS SO ORDERED**.

Dated: February 10, 2026

_____
Honorable Linda Lopez
United States District Judge

---

[1] Respondents state "there is no indication that removal to a third country is contemplated in this case." Ret. at 7. Given Respondents' statement, this Court declines to enjoin Respondents from removing Petitioner to a third country at this time.